3-0-9-0-3-7, the people of the state of Illinois, and the faculty of Lake Erie Community, this is for Earl R. Castillo, and I'll take David Harris. Mr. Harris, you may proceed. Good afternoon, Your Honors. May it please the Court, I'm David Harris, Assistant Defender on behalf of Earl Castillo. We raise two issues in our brief, one concerning the sufficiency of the evidence regarding knowledge of possession of cannabis, another regarding the sufficiency of the evidence regarding the amount or weight of cannabis. I'd like to focus my argument today on this second issue regarding the weight, but would be happy to discuss any questions Your Honors have regarding the issue of knowledge. This issue is fairly straightforward, and there are several cases, including a Supreme Court decision, that should guide this Court to reduce Mr. Castillo's conviction. In this case, the police recovered 9,832 grams of suspected cannabis from a vehicle driven by Mr. Castillo. It was stored in two different locations in the car, and was further broken down into an unspecified number of bundles or bags. The officers took the evidence, placed it in a box, and the box was sent to a forensic scientist's lab. The chemist testified only that the box contained 9,832 grams of plant material, and she performed two tests on an unknown number, an unknown size of samples or a sample. One optical test or visual test under a stereoscope, and then a chemical test. These tested positive for cannabis, and then she opined that somewhere in the box was cannabis. This is simply not enough to prove that Mr. Castillo possessed 5,000 grams or more of cannabis. The Supreme Court has spoken on this issue in People v. Jones, a case in which the chemist tested two out of five packets containing a white, rocky substance suspected to be cocaine. The court said that while it would not be difficult to speculate, as the trial judge did, that the remaining three packets that were untested also contained cocaine, that finding has to be based on evidence, not speculation or guess or conjecture. Similarly here, it's perhaps not difficult to speculate that the remaining untested bundles or untested amount of plant material also contained cannabis. We're forbidden from making that speculation. The Supreme Court has forbidden us. The jury was not allowed to make that inference. The appellate court on appeal can't make that inference because the state simply did not conduct proper testing to show that there were more than 5,000 grams of cannabis. As I mentioned, there are several cases, not just the Supreme Court case. The Supreme Court case involved five packets of a white, rocky substance. They tested two. The Supreme Court would not impute the results of those two to the remaining five. There's the appellate court case in People v. Clinton in which 13 tinfoil packets containing a white, powder substance suspected to be heroin were found all in one bag. The chemist took six of those packets, emptied them into a tray to get a weight, and then conducted a test. Not only did the appellate court in the first district say you can't impute those test results to the remaining seven untested packets, you couldn't even say that all six packets that were mixed into the test contained heroin. All you could say was that there was some amount of heroin because the chemist, not the defendant, created this combined mixture of, at that point, over one gram of heroin. Before that, there were six packets of an unknown weight, and the court reduced the conviction to less than a gram or some amount of heroin. These two cases show the possibilities of what occurred here. Either all the bundles, the unknown number of bundles, were unwrapped and the plant material was put into a bag, which is what appears from the chemist's testimony that the box contained plant material. She didn't testify that it contained baggies or bundles or even open plastic bags. Or, and that's how it happened in Clinton, where the packets were unwrapped and mixed together. Or, as the state suggests in their brief, that the bundles were still intact in the box during trial. That's like Jones, where you had five discrete packets, only two were tested, and you couldn't impute those test results into the remaining five. This court has addressed the issue in People Against Hall. This district, this was a slightly different case. There were 30 to 40 rocks. The chemist tested residue that was in the bag with the rocks, and this court said that you can't impute those test results to the rocks. There was another case of People Against Adair in the first district, which was 24 pills and a powder, and the chemist combined them, crushed them together, and then did a test, and the court held that all you could say was there was some amount of the two different narcotics found in those test results. And those are two more examples of Jones, where there are discrete packets, or Clinton, where the chemist or the police officers commingle all the recovered additives. So we're not sure what we have here? Is that what you're saying? The record, not exactly. The record shows that these unknown number of bundles were recovered. It was put into a box, sent to the chemist, and the chemist was asked what is in the box, and she only said 9,832 grams of plant material. From that testimony, it seems that the wrapping was not there, and that it was mixed together at some point. But even if it wasn't mixed together, as the state suggests in their brief, that the bundles remained intact, that's just like the Supreme Court case in Jones with five discrete bundles. That's like this court's decision in Hall with 30 to 40 rocks, and the residue was tested. There's another case, and the only other case— So then, finish up your thought and repeat those whole— Okay, so we're not sure. The state suggests they're discrete bundles, correct? Discrete bundles were found. The state suggests they were still intact even after they reached the chemist's lab, were tested, and then sent to the courtroom during trial. They say that the jury was able to see how many bundles there were. Okay, but how many bundles were tested? The chemist didn't testify about that. The chemist testified she received 9,832 grams of plant material. She did a stereoscopic exam. Which could have been weighed as they were in discrete packages. She didn't provide different weights for bundles, but they could have remained in the package at that point. But she didn't testify that she tested— No, I mean could have. Right. That's could have. I didn't say what was testified to. Could have remained in separate bundles. They could have remained in separate bundles. But what did she testify to? She testified that there was plant material in the box. She testified that she did a stereoscopic exam, which is just a visual exam, and then a Dukouna-Levine test, which is a chemical test. And in an article I cited in the brief, they said a pair of tests commonly applied to a single sample. But she didn't testify that she did one or two samples. The state suggests she did two tests maximum around two different samples. Even if it was two different samples, she didn't say which bundles they came from. The state's suggesting things—I mean, what does the record show? The record shows these two tests, a stereoscopic exam and a chemical Dukouna-Levine test. She didn't say if she repeated that test on multiple samples from multiple bundles. She just said she did the test on 900-some grams, right? She didn't even say she did the test on 900 grams. She didn't say how many grams she used for her test. She just said the box contains 9,832 grams. She did a test, a visual test and a chemical test, positive for cannabis, and then she was asked her opinion of the contents of the box, and she said it does indeed contain cannabis. She didn't say how much of it was cannabis. She didn't say whether she—the size of whatever bundle she got her sample from, so we could at least say that bundle and that amount of cannabis was found. So you're saying all of this ambiguity in her testimony does what? The ambiguity and absences of her testimony show that the state didn't satisfy their burden to prove the amount of cannabis beyond a reasonable doubt. The only other case the state cited in its brief, they cited Jones for the rule of law in this area, which is about the five packets of suspected cocaine where only two were tested. They cited a Fifth District case, People Against Pain, which also supports our position. The pain court said that when multiple bags or containers are seized, there needs to be a conclusive test of a sample from each bag. When only one is tested, you cannot include the weight of the untested samples, and that appears to be what we have here. We have multiple bundles found in two different locations in the car. We don't know how many bundles there are, and there was one or two tests— there were two tests done on one or possibly two samples, as the state says. You can't include the weight of untested bundles, and since they didn't even prove the weight of the tested bundle, there's no weight here. There's just some amount of cannabis. It's their burden to prove the weight of an item with the banned chemical composition here, cannabis, and they simply didn't prove it. So you have discrete packaging. You're saying it's state of the law. You have to test within each discrete package. There is an exception for that. Typically, courts lay this out that you have to test from each discrete package unless, as the Supreme Court described in Jones, the samples or the bundles or packages are sufficiently homogenous, and there's just not sufficiently homogenous here. In Jones, they described the homogeneity exception, and then they looked at five packets of a white, rocky substance, suspected to be a controlled substance, and they said that doesn't satisfy the homogeneity exception. Here we have— Homogeneity. Homogeneity exception, excuse me. Here we have an unknown number of bundles of plant material suspected to be cannabis. That's the same type of language in Jones, same information in Jones. It doesn't satisfy the exception. In Clinton, there were 13 packets all in a single bag, 13 tinfoil packets in one plastic bag containing a white powder substance suspected to be heroin. Those weren't sufficiently homogenous. Here we again have an unknown number of bundles containing plant material suspected to be cannabis. That doesn't satisfy the exception. The Supreme Court in Jones gave an example of a case that does satisfy the exception. It was an earlier case from 1986 in the appellate court dealing with 100 pills. It said that the pills had similar lettering, similar marking, similar beveling on the edges, similar scoring, and the chemist testified about all of this. She visually examined all 100, testified that based on these similar characteristics, they appeared to be made by the same machine, the same people, the same composition, and then she tested three of them. And they said that's sufficiently homogenous. You can use the result of those three for all 100 pills. We don't have anything like that here. We don't have any testimony beyond plant material or the officer saying suspected cannabis buds. We don't know. There was no visual examination of all of it to look at the leaves or whatever other material was wrapped in here. We don't have any idea of whether the packaging was homogenous, whether they were the same weight, the same type or color of bags. That was one of the issues in the case of people against Adair. There were multiple colors of pills, and they said that's an indication that you can't, these aren't sufficiently homogenous, you can't apply that exception, and they have to be tested. So what would be wrong if the forensics technician took 10 of these packages, hypothetically now, I'm going off the record, 10 of these packages, opened them all up, put them into a big tub, okay, stirred them up, and took random samples and tested them, and weighed the amount in the big tub? Right. The problem with that is without any description that these were all identical items, identical packaging, similar appearance of the leaves, similar coloring, anything like that, before they were mixed together, you have the chemist, the state chemist, creating a substance that contains whatever banned narcotic is found there, as opposed to the defendant. This distinction was discussed in the Fourth District in people against Coleman, where they discussed the possibility of a 900-gram box of baking powder and then some cocaine. And they said it makes a huge difference if the chemist takes the box of baking powder and the cocaine and puts it together, and I think the example was just a gram or two of cocaine or heroin. If it's mixed together, suddenly you have a substance of over 900 grams of heroin. It's a much more serious offense than half a gram or a gram of heroin if it wasn't mixed prior to that. Counsel, you have two minutes. So on this theory, what if that bag, okay, had been mixed by the defendant? If the bag had been mixed by the defendant, then the defendant would have created this substance of 900-some-odd grams containing a controlled substance, and he would be liable for the whole amount. Even though it's not purity. Even though it's not pure, yes. Because we're missing a purity factor here. Right, and the purity I don't think is necessarily relevant. It's whether the mixture was created by the state or by the defendant. It would be to a consumer. But I don't think the purity doesn't affect whether it's criminal conduct or not or the classification of conduct. So in this case, if the state emptied these bundles together and mixed it up, and then the chemist, all she could say is the box contains cannabis. I did a test on an unknown number of samples. All that proves is that there was some amount of cannabis. It doesn't prove that all 9,832 grams were a substance containing cannabis prior to it being mixed. Well, is it not criminal to possess any substance containing cannabis or any package containing cannabis? Yes, and that's why we're not asking for an outright reversal on this issue. We're asking for it to be reduced to the lowest amount because no weight was proven. Just possession of any amount of cannabis that was no more than 2 1⁄2 grams. That's what the court did in Jones. That's what the court did in Clinton with their 13 packets. They reduced it to some amount of heroin because it was mixed together before it was tested. And while you can speculate it had cannabis or it had heroin or it had cocaine before it was mixed and tested by the state, that's not enough for proof beyond a reasonable doubt. The Supreme Court is reversed in Jones. The First District is reversed in Clinton and Adair. This court is reversed in Hall. That's simply not enough, and the court should likewise here reduce Mr. Castillo's conviction to possession of some amount of cannabis, which is a class C misdemeanor. And though this wasn't raised in the briefs, if that's done, his fines become void. It's a $65,000 street value fine, a $3,000 drug assessment, and those would also need to be reduced or vacated. Are you, by implication, conceding the first issue? No, I don't believe I have time to address the first issue. I would urge this court to scrutinize this case in comparison to Ortiz cited in the brief, where the defendant there exhibited far more behaviors indicating knowledge than here. The defendant there had 100 kilos of cocaine worth $30 million in his truck that was half loaded. It's in an 18-wheeler. It was an 18-wheeler. It's not in his cab. It was only half filled with legitimate cargo. He was wiping his brow. He was shaking his leg. His foot was tapping when he was questioned by the police. And the Supreme Court in Ortiz said that's not enough for knowledge. Here we have Mr. Castillo driving a car that doesn't belong to him. He pulled over. He handed over his license and the registration. He wasn't handcuffed. He cooperated with them. Half of the suspected cannabis was found inside the spare tire mounted underneath the vehicle. The other half was in a hidden compartment underneath the rug in the trunk. Is there some testimony about quite a particular odor or smell? The officers testified that they smelled raw cannabis when they approached the car. They testified they had training in detecting the odor of cannabis. And they found cannabis residue within the area. There is, yeah, in the passenger's backpack. There was some residue in the jar. And these are simply factors that stack up to Ortiz with the defendant sweating, wiping his brow, having a twitch of his leg, tapping his foot, and having $30 million worth of cocaine behind it. Obviously a non-factory piece of metal sealing off that part of the trailer. Here it was also non-factory, but it was underneath the carpet in the trunk. Spray foam insulation. There was a masking agent on the number of bundles, which might make someone who's not sufficiently trained unable to detect the odor. But with that issue, we're still standing on the brief and request outright reversal. But even lacking that, the state didn't show anything more than possession of some amount of cannabis simply because they didn't do the job properly in the forensic lab. And so this commission should be reduced at least to the misdemeanor. Any other questions? No? Okay, thank you. Mr. Yaninovic, you may respond. Thank you, Mr. Police Corp. Counsel. To briefly touch upon the reasonable doubt argument, and I think Your Honor touched upon probably the key factor in the case, which is the odor. In preparing for argument, I kind of thought when I was reading the defendant's brief, a scene from Independence Day, when after aliens unleash their barrage on America, the President is whisked away to a private area out in the desert, and is taken underground, and you see it's supposedly, theoretically anyway, Area 51. And he looks at one of his cabinet members and says, why wasn't I told of this? And the cabinet member looks at him and poignantly in a straight face says, plausible deniability. And I think that's what the defendant's argument here is all about, plausible deniability. Claiming that we have an individual who's driving a car that he's not used to driving, we can't associate him with that car in a way. The fact that we have a hidden compartment can't be seen. And because he can't see it, and because it's not his car, plausible deniability that he had any knowledge about the fact that the car came in contact with it. Except for the fact of the odor inside the cabinet of the vehicle. And it was an open cabinet, it wasn't a trunk. So we think that considering the state of the law, which is, that the discovery of drugs in a vehicle under the defendant's control, and in a place where he could have been or should have been aware of them, gives rise to the inference of both knowledge and possession. Here, because of the odor, he was in a place, he had control of the car, he was a driver. The law is pretty clear on that. And as far as his knowledge, he was in a place, and the item was in a place, where he could have or should have known. And that odor, I think, is the definitive factor here, that I think clearly establishes the knowledge element that the defense claims is absent. So we think that we have established beyond a reasonable doubt, both possession and knowledge sufficient to sustain this conviction. But the officers testified that they had to be trained to recognize the smell of that. I mean, is it something that you're supposed to, I mean, do you know what it smells, is everyone supposed to know what it smells like? The officer also testified the fact that personal use, personal knowledge, is also a way to be able to take and acquire that kind of knowledge. Now, of course, I think the obvious question is, well, how can we prove that he knew what it smelled like? Well, we can't. Okay? It's like any other kind of knowledge. How can we prove that he knew anything? We can't. We can't prove directly that he can't. All we can do is based on inference. And here, because of the nature of the odor of marijuana, its distinct nature, et cetera, I think that it's clear that it was for the trier of fact to determine. And in this case, the trier of fact found and made that determination in favor of the state, considering the amount that was there. What role did the cannabis residue in a backpack within the control of the defendant, arguably? Well, my understanding is the backpack belonged to the passenger. Oh, okay. Okay? That's my understanding of the record. Now, if I'm wrong, I apologize for that, but I think that belonged to the passenger. Now, obviously, if it did belong to the defendant, then clearly there's even a stronger connection in that particular situation between his knowledge of cannabis, the odor, and what was going on inside that vehicle at that time. We're told that we can only draw reasonable inferences from proven facts. And it sounds to me like you're asking us to draw an inference based on an inference with regard to whether or not Mr. Castillo knew what marijuana or cannabis smelled like. I don't think we're drawing an inference on an inference. What's your fact? The fact is the odor. And what's your fact with regard to whether or not Mr. Castillo should have recognized that odor? Yes, the odor. It's the nature of marijuana itself and the odor that accompanies it. I think we can establish his knowledge, okay, based on that odor. I think at that point, that inference, I think, can be reasonably drawn. If you were to take and say, it's really no different than in any other case in which you smell the odor of marijuana, whether it's burnt or otherwise. Well, you just candidly admitted that the state could not prove that Mr. Castillo knew what it smelled like. So if there's no fact, you're asking us to infer based on the fact that the officers knew what it smelled like, that Mr. Castillo knew what it smelled like, and then based on that inference, we're supposed to draw an inference that he somehow knew that this was in the car. What I said was we cannot prove by direct evidence his knowledge. Unless we knew that he went to a school or if we could somehow prove that he had ever used it or whatever, we cannot directly prove it. We have to rely upon the inference. The inference arises from the odor itself. I think, if I understand Justice McDade's observation, is that the odor allows you to make the inference of the existence of a substance. And that's basically the first inference. So how do you make an inference of the knowledge of the defendant that that is the substance? Because of the unique nature of the substance itself. Well, how can we prove? Let's make it a little easier. Burnt marijuana. Burnt marijuana has an extremely pungent odor. It does? It most certainly does. I was a resident assistant in college, and believe me, I can tell you it has a real pungent odor. You're just giving us a hypothesis. My question was, what fact did the state prove to show that Mr. Castillo should have known the odor or did know the odor of cannabis? It's the fact of the nature of the distinct odor itself. And the fact that he was in a cab, in a vehicle, that had that distinct odor. I think what we're getting to here is we can rely on inference, because otherwise there's no way of being able to prove knowledge at all. So do you think everybody ought to be able to know what that smells like? That anybody should know what raw cannabis smells like because it's a distinct odor? Yes. I think that based on the facts that you have in the case, based upon the situation you have, I think you can. And if anything, what it gets down to is, are we talking here about the burden of proof or the burden of persuasion? If we take and show these facts, and we establish that there is this odor in a vehicle, and that odor is unique to a particular plant material, I think from that we can infer the inference can be made. Because it's not that we have to establish that he has direct knowledge. Because in any case where knowledge is an element, we never can prove it. The law is we can show from the facts and circumstances surrounding the event. I think at that point when we do that, we've established our burden. Whether that burden is sufficient is for the trier of fact. At that point, if the defendant wants to take and say, I'm completely clueless about what the odor is, he can do that. He can testify. He doesn't have to testify. He has no burden of proof, but it's the burden of persuasion on the issue. And you have the burden of proof. We have the burden of proof. Based on facts. And if you want us to draw reasonable inferences, you have to give us the facts from which we can draw those inferences. Yeah, that's true. And you have to give us a fact. You can't give us another inference from which to draw that inference. Now, the odor is there, but you have to prove that Mr. Castillo knew that that's the kind of odor of cannabis. You are establishing and setting a burden that is totally impossible to do. Well, I'm sorry you guys do that all the time with defendants, but that's not what I'm doing. No, we don't take and do that with defendants. We don't establish burdens with them. For us to establish his actual knowledge based on a fact, we would have to show that he admitted, I know what marijuana smells like. I think you alluded to it earlier. If he had a conviction, perhaps, for possession of marijuana or something of that nature. But just to blanket, to say that it has a unique smell, therefore, you should know what it is. If you've never smelled it, how do you even know it's a unique smell? I guarantee you that my mother would have no idea what raw marijuana smelled like. And I can tell you that I don't. But because it's unique, is she supposed to know that? I understand what you're saying about setting a burden that you can't prove. But there are things and inferences that you could, facts you could establish that could draw those inferences. For instance, if he had a conviction for something like that. And what about the situation where he doesn't? Well, I mean, there are some times when you don't have enough evidence to convict. But when you have that amount and you have that pungent of an odor, I think the inference can be raised. I think the inference is there. And I think that you can establish his knowledge because the law provides what he could have been or should have been aware of. He was in a place where he could have been and should have been aware of. And that odor is what does it. Now, if he wants to take and say, I have no knowledge, testify. I don't think... The burden is not his, it's yours. The burden of proof is ours. That is not the same as the burden of persuasion. Well, you have to prove facts. And that's what we did. Could you go to the second issue? I would be more than happy to, thank you. And the second issue, the key aspect here, and I quoted the chemist's testimony in my brief at page 11. She testified that, quote, the contents that are actually in the box, close quote, tested positive for the presence of chemicals. Okay? Now, I read, obviously read the record here. And it is not exactly a modicum of clarity as to exactly what was done with the testing. Okay? Unfortunately, I was not the one asking the questions. I think I would have asked some different questions, something a little more probative, okay? But the take that I got from this was that after the officers discovered the two separate areas, the two separate amounts of marijuana, took one amount, put it in a clear plastic bag, took the other one from the inner tube and put it in a clear plastic bag, put both of those into a box. And they were wrapped, weren't they? They were in a clear plastic bag. They were wrapped, yes. I mean, the officers didn't. They just took the pre-existing wrap. From the way it sounds, that's what it sounds like. Yeah. Okay? It sounds to me, based on what the testimony was and what this chemist did, that she treated this as though this was a homogeneous substance. And what she did is, it sounds as though, to me, she tested a sample from either one of the bundles or whatever it was in the one clear plastic bag and tested a sample from the other clear plastic bag and weighed them all together, put the bags on a scale, weighed them all together, and drew a conclusion. Now, that's what I gather from the testimony. Now, I have a question here. We have two plastic bags that are provided and used by the officers. How many bundles are in the bag? I do not know. We don't. Okay. That was never. Never? To me, I went through my notes. I scoured my notes and everything, and I just, I cannot tell you. And I don't know how many. The record doesn't, it's unclear on the record. It is unclear on the record. And that's the reason why I think what happened is I think the questioning was directed that way, and I think the expert somewhat directed it that way, that this material is all treated as a homogeneous group, much like the pills that counsel described before. Okay. So, that, you know, but we don't have the clarity of the testimony that's in the bill case. No. Okay. So, but based on that and based on the general proposition with respect to the rule, she did testify that the box contained. Cannabis. And she testified that that weighed the 9,832 grams. So, her conclusion was that the entire box contained cannabis. Now, whether or not that is sufficient to take and establish the carry-on burden, okay, of course, the people are going to suggest that it is. But then again, I cannot tell you how many bundles were there or anything like that because that's just unclear. Thank you. I just have one last question. The representation, whether it's the actual box or a picture of the box, is People's Exhibit No. 9. Do you know if that is the box itself or photographic evidence? I think, I believe that's the box itself that contains cannabis. Okay. I think that's what was placed. I think that's what was marked. The two separate bundles that were put in separate plastic baggies or bags, I should say baggies, you know, plastic garbage bags like, those were placed in a box. I think that box is No. 9. Okay. All right. Thank you. Thank you very much. Thank you, counsel. Mr. Harris, you may reply. Thank you. First, regarding knowledge, this is an inference upon an inference. It's an inference of being aware of the odor and then knowing what that odor is from. And the officers testified, they specifically testified, I knew what this odor was because of my training or due to my training. Trooper Strauss said that. Sergeant Blank said that. Strauss said he had done 100 of these stops and smelled raw cannabis hundreds of times. Trooper Sergeant Blank said he had smelled it over 1,000 times. And there's simply no evidence to infer that Mr. Castillo was aware of what this odor was, especially where these bundles had a grease masking agent. Half of it was outside the car or inside a spare tire. The other half was in a spray foam insulated sealed compartment in the trunk with a grease masking agent on it. And officers said despite the masking agent, due to their training, they could smell this. Doesn't this happen all the time, though? I mean, you know, you have a courier, OK? And let's say it's cocaine, and it's in the side wall inside of a car, OK? And it goes down on the interstate, the typical interstate arrest. And don't we charge the driver with possession? It happens, and it depends on the circumstances of the case. But there's no odor? There's no odor there at all? In cases without odor, I've cited some cases in my brief where it's a more accessible area in the glove compartment, or there's a gun under the seat, but it's sticking out and it's visible. Oh, we've had cases where it's put, you know, they take the door panel off, and it's inside the door panel. Then there are also cases where it's the owner's, the driver is the owner. Perhaps there are some other cases where that inference is made, but, again, it would be a very fact-specific question of how you can infer that the driver had knowledge. And here, the state, it's still looking for the odor. So if the backpack had cannabis residue, and it turns out that it's the passenger's backpack, that wouldn't be anything at all? I mean, that could also show that it's even more reasonable to say he wasn't aware of the odor of raw cannabis. If there's a different smell, as counsel described it, an unmistakable smell of burnt cannabis inside the car, that would make it even more difficult for an untrained or inexperienced person to be aware of a different odor coming from the rear of the car or from outside the car in the spare tire. Right, but wouldn't it make an inference that one is familiar with the product? That's a possible inference to make. And, again, this was the passenger's backpack. It was the passenger's? I believe counsel is correct. That came out that it was the passenger's backpack. I'd like to move on to the second issue regarding the weight, because counsel keeps speaking about two bags or two separate bags. There were two locations in the car, but multiple bundles within those locations. The officer on page 167, Trooper Strauss, testified just in the trunk alone there were bundles, plural bundles, regarding that area. Sergeant Blanks also said there were bags, plural bags. So it's not just that there are two discrete things, two discrete containers, and a test was done from one of them. If that was the case, perhaps we'd be arguing that it should be reduced to the weight of one of those bags. The chemist didn't describe whether there was half. But we don't know what that weight was. There was a field test saying there was 11 1⁄2 pounds of material in the trunk and 11 1⁄2 pounds of material in the tire. The prosecutor argued there were 23 pounds. And that's actually a significant difference from the weight of plant material. The plant material was 9,832 grams, which is roughly 21.67 pounds. The officer recovered 23 pounds. That indicates there could have been over a pound of packaging of individual wrapping. But, again, because the evidence was insufficient, they didn't say how many bundles there were. They didn't say how many bundles arrived at the chemist or whether the chemist received it all mixed together. But either way, whether the police mixed it or whether it was still in discrete bundles of an unknown size, the chemist's test on an unknown sample can't be imputed to all the rest of the discrete bundles, and it can't be imputed to this mixture created by the police if that's the way it happened. If there are no further questions, I ask this court to reverse my client's conviction or reduce it to a Class C misdemeanor. To a what? Class C misdemeanor. Oh, Class C. I thought you said Class A. Class C. Possession of not more than 2 1⁄2 grams. I don't believe there are any further questions, counsel. Thank you. Thank you, counsel, both, for your fine argument this afternoon on this matter. It will be taken under advisement, and a written disposition shall occur.